Matter of Campaniello v New York State Div. of Tax Appeals Trib. (2018 NY Slip Op 03400)





Matter of Campaniello v New York State Div. of Tax Appeals Trib.


2018 NY Slip Op 03400


Decided on May 10, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: May 10, 2018

524039

[*1]In the Matter of THOMAS CAMPANIELLO, Petitioner,
v
NEW YORK STATE DIVISION OF TAX APPEALS TRIBUNAL et al., Respondents.

Calendar Date: March 27, 2018

Before: Egan Jr., J.P., Lynch, Devine, Clark and Mulvey, JJ.


Lewin & Lewin, LLP, Washington, DC (Nathan Lewin of counsel) and Schlam Stone & Donlan LLP, New York City (Richard H. Dolan of counsel), for petitioner.
Barbara D. Underwood, Acting Attorney General, Albany (Robert M. Goldfarb of counsel), for Commissioner of Taxation and Finance, respondent.


Egan Jr., J.P.

MEMORANDUM AND JUDGMENT
Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Tax Law § 2016) to review a determination of respondent Tax Appeals Tribunal sustaining a notice of deficiency of personal income tax under Tax Law article 22.
Petitioner emigrated from Italy to New York in the early-1960s, married, established a family and, during the ensuing decades, established a successful retail furniture business, developing extensive business and real estate holdings in both
New York and Florida [FN1]. In 1975, petitioner opened his first retail furniture showroom in New York City. In 1979, petitioner relocated the showroom to its present location at 225 East 57th Street in New York City and purchased a condominium apartment at 4455 Douglas Avenue in the Bronx, where he resided with his wife and daughter. In 1981, petitioner expanded his furniture business opening his first retail furniture showroom in Miami, Florida and, contemporaneous therewith, purchased a condominium at 201 Crandon Boulevard, Key Biscayne, Florida, where he would stay when conducting business in that state. By 2007, [*2]petitioner had acquired additional real estate holdings in New York, including, among other things, two warehouses and co-op shares in 136 Greene Street in New York City, which he subsequently renovated for the purpose of opening a second retail furniture showroom [FN2]. During this same time period, petitioner opened three additional retail furniture showrooms in Florida and also acquired nine other residential and commercial properties in that state. Despite his business and real estate holdings in Florida, however, through 2005, petitioner and his wife jointly filed New York State and City resident income tax returns indicating the Douglas Avenue condominium as their primary address.
On November 19, 2007, petitioner sold one of his Florida properties — the Royal Palm office building — for the sum of $6,593,300, resulting in a long-term capital gain of $5,392,445. Less than one month later, having previously obtained an extension for the filing of his 2006 income tax return, on December 7, 2007, petitioner filed a New York nonresident and part-year resident income tax return, claiming — for the first time — the filing status of married but filing separately and identifying his address as Crandon Boulevard, Key Biscayne, Florida. In October 2008, after obtaining an extension for the filing of his 2007 income tax return, petitioner again filed a New York nonresident and part-year resident income tax return, wherein he reported, among other things, the $5,392,445 long-term capital gain from the November 2007 sale of his Florida office building, indicating zero tax being due [FN3]. On both petitioner's 2006 and 2007 nonresident income tax returns, the "No" box was checked in response to the question, "Did you or your spouse maintain living quarters in NYS [for that given year]," despite the fact that petitioner continued to own and maintain the Douglas Avenue condominium.
In 2010, the Department of Taxation and Finance audited petitioner's 2007 nonresident and part-year resident income tax return, ultimately concluding that petitioner failed to present clear and convincing evidence that, as of 2007, he had abandoned his New York domicile and acquired a new Florida domicile. The Department thereafter issued a notice of deficiency assessing petitioner for additional personal income taxes due, including a negligence penalty pursuant to Tax Law § 685 (b) and interest, totaling $729,501.39. Petitioner challenged the notice and, following a hearing, an Administrative Law Judge (hereinafter ALJ) sustained the notice of deficiency. Petitioner then appealed to respondent Tax Appeals Tribunal, which affirmed the ALJ's determination and upheld the negligence penalty. This CPLR article 78 proceeding ensued.
For income tax purposes, an individual is a resident of New York when that individual is domiciled in this state (see Tax Law § 605 [b] [1] [A], [B]; Matter of Ingle v Tax Appeals Trib. of the Dept. of Taxation & Fin. of the State of N.Y., 110 AD3d 1392, 1393 [2013]; Matter of Gray v Tax Appeals Trib. of State of N.Y., 235 AD2d 641, 643 [1997]). Generally speaking, a person's domicile "is the place which an individual intends to be such individual's permanent home" (20 NYCRR 105.20 [d] [1]; see Matter of Ingle v Tax Appeals Trib. of the Dept. of [*3]Taxation & Fin. of the State of N.Y., 110 AD3d at 1393) for it is well-settled that "domicile is established by physical presence in a particular locality coupled with the intent to remain" (Matter of Kartiganer v Koenig, 194 AD2d 879, 880 [1993]; see Matter of Newcomb, 192 NY 238, 250 [1908]). As relevant here, once a domicile is established, it "continues until the individual in question moves to a new location with the bona fide intention of making such individual's fixed and permanent home there" (20 NYCRR 105.20 [d] [2]; see Matter of Ingle v Tax Appeals Trib. of the Dept. of Taxation & Fin. of the State of N.Y., 110 AD3d at 1393; Matter of El-Tersli v Commissioner of Taxation & Fin., 14 AD3d 808, 809 [2005]). As the individual seeking to establish a change in domicile, it was petitioner's burden to prove his change of domicile by clear and convincing evidence (see 20 NYCRR 105.20 [d] [2]; Matter of Newcomb, 192 NY at 250; Matter of Ingle v Tax Appeals Trib. of the Dept. of Taxation & Fin. of the State of N.Y., 110 AD3d at 1393; Matter of Bodfish v Gallman, 50 AD2d 457, 458-459 [1976]). Importantly, this Court will not overturn an agency's determination so long as it is supported by substantial evidence in the record (see Matter of Gray v Tax Appeals Trib. of State of N.Y., 235 AD2d at 643).
Here, petitioner does not contend that his domicile changed from New York to Florida as of a date certain. Rather, petitioner maintains that his contacts in Florida date back over 25 years to 1981 — when he opened his first retail furniture showroom in Miami and purchased the condominium in Key Biscayne. Petitioner contends that, slowly over the course of time, his business interests grew and he began spending an increasingly significant amount of time at his Key Biscayne residence such that, at the very least by 2007, he had effectively abandoned his New York domicile and established a new domicile in Florida. Without question, petitioner submitted evidence demonstrating his significant business ties to Florida, including his ownership and operation of four retail furniture showrooms and nine rental properties, and the fact that he helped manage a restaurant located in one of his buildings. Petitioner also submitted evidence that he acquired a Florida driver's license in 1998 and had moved many personal belongings that were most important to him to his Key Biscayne residence, including his Ferrari, sailboat, guitar and espresso machine. Further, the record establishes that he spent the majority of 2007 in Florida. Accordingly, we do not take issue with petitioner's assertion that he had established numerous significant ties to Florida as of 2007 such that, on the record before us, a contrary determination by the ALJ and the Tribunal would not have been unreasonable (see Matter of Gray v Tax Appeals Trib. of State of N.Y., 235 AD2d at 643-644).
However, there is similarly no dispute that in 2007 petitioner also continued to maintain substantial and significant business and personal contacts in New York. Petitioner continued to own, receive mail and keep personal belongings at his Douglas Avenue condominium — admittedly staying there each time he visited New York City. Moreover, although petitioner's New York retail furniture showroom may not have been as successful in 2007 as compared to his Florida showrooms, petitioner nevertheless continued to maintain this business and was working on opening a second such showroom in New York City. He also maintained a warehouse affiliated with his New York furniture business and another that he rented to third parties. Petitioner also acknowledged that the administration and bookkeeping functions for all of his New York and Florida businesses were centralized and maintained in New York. Additionally, petitioner's daughter and son-in-law lived in New York and gave birth to a child in 2007, whom petitioner acknowledged he returned to visit during such time. Moreover, although petitioner indicated that he moved to Florida because it was better for his health, he acknowledged that he continued to see his regular doctor in New York. Petitioner acknowledged that he traveled to New York for significant periods of time in 2007 for both business and personal purposes, establishing and maintaining a regular pattern of travel generally consisting of him spending long weekends in Florida. Based on the evidence produced with regard to petitioner's travel schedule, [*4]we do not find it was irrational or unreasonable for the ALJ and the Tribunal to credit petitioner for spending 169 days in New York during 2007 (see Matter of Zanetti v New York State Tax Appeals Trib., 128 AD3d 1131, 1132 [2015], lv dismissed 25 NY3d 1189 [2015]).
Although petitioner testified that he had stated his intent for Florida to be his domicile long before the November 2007 sale of his Florida office building, the Tribunal reasonably deferred to the ALJ's finding that petitioner's testimony in this regard lacked credibility based upon the fact that he misrepresented on both his 2006 and 2007 nonresident and part-year tax returns that neither he nor his wife maintained living quarters in New York during these years, and we defer to the ALJ's and the Tribunal's credibility determinations in this regard (see Matter of Ingle v Tax Appeals Trib. of the Dept. of Taxation & Fin. of the State of N.Y., 110 AD3d at 1393; Matter of Suburban Restoration Co. v Tax Appeals Trib. of State of N.Y., 299 AD2d 751, 753 [2002]; Matter of Callicutt v New York State Commr. of Taxation & Fin., 241 AD2d 778, 779 [1997]). On the record before us, therefore, there is substantial evidence supporting the Tribunal's determination that, as of 2007, petitioner had not abandoned New York as his domicile. Accordingly, because the Tribunal's determination is rationally based and supported by substantial evidence in the record, it is not within this Court's province "to substitute our judgment for an agency's reasonable determination supported by substantial proof in the record merely because one could reasonably reach a different conclusion on the basis of the evidence presented" (Matter of Gray v Tax Appeals Trib. of State of N.Y., 235 AD2d at 643-644 [internal quotation marks and citation omitted]).[FN4]
We also find that the Tribunal properly sustained the assessment of the negligence penalty against petitioner pursuant to Tax Law § 685 (b). Tax Law § 685 (b) provides, in relevant part, that a negligence penalty may be imposed "[i]f any part of a deficiency is due to negligence or intentional disregard of [Tax Law article 22] or rules or regulations hereunder (but without intent to defraud)." Here, petitioner made misrepresentations on his 2006 and 2007 nonresident tax returns indicating that neither he nor his wife maintained living quarters in New York during those years. Despite the fact that petitioner claimed these misrepresentations were the product of a mistake by his accountant, we find no error in the Tribunal's reliance upon these misrepresentations in upholding the negligence penalty (see Tax Law § 685 [b]; Matter of Rubin v Tax Appeals Trib. of State of N.Y., 29 AD3d 1089, 1091 [2006]; Matter of Suburban Restoration Co. v Tax Appeals Trib. of State of N.Y., 299 AD2d at 753). To the extent not specifically addressed, petitioner's remaining contentions have been reviewed and found to be [*5]without merit.
Lynch, Devine, Clark and Mulvey, JJ., concur.
ADJUDGED that the determination is confirmed, without costs, and petition dismissed.



Footnotes

Footnote 1: Petitioner also established a retail furniture showroom for a number of years in Chicago, Illinois.

Footnote 2: Although the extent of ownership is unclear, the record reflects that petitioner had also acquired certain additional ownership interest in the same building where his initial New York City retail furniture showroom was located.

Footnote 3: For both 2006 and 2007, petitioner's wife filed New York State and City resident income tax returns claiming the filing status of married filing separately, indicating her primary address as the Douglas Avenue condominium.

Footnote 4: Nor do we find merit in petitioner's contention that the Tribunal's determination unconstitutionally limits the ability for him and his wife to enjoy a marital relationship whereby they choose to "live apart together." Contrary to petitioner's assertion, the Tribunal correctly recognized that there is nothing in the Tax Law or applicable regulations that, for tax purposes, requires a husband and wife to have the same domicile (see 20 NYCRR 105.20 [d] [5] [i]). Rather, it was the fact that, throughout 2007, petitioner continued to own, use and keep personal belongings at the Douglas Avenue condominium — where he had lived since 1979 — that was significant to the Tribunal's determination; however, it was only one factor that was considered in determining whether he had abandoned New York as his domicile as of 2007.